# Appeal of Rudolph Shirk et al., Exrs, etc.

## Ann Shirk's Appeal.

## Jacob H. Shirk's Estate.

The allowance of a claim by a widow for money lent her deceased husband, reported by the auditor of his executor's account, and confirmed by the orphans' court, and resting on proof that she received a corresponding sum of money from her father's estate, that the husband admitted having some of her money in his hands, and that she was assessed for nearly as much money at interest, without any contradictory evidence,—will not be disturbed on appeal.

The probability that a portion of the money received by her from her father's estate was used in her preparations for housekeeping will, if found by the auditor, justify him in deducting that portion from the interest.

(Argued May 15, 1888. Decided May 25, 1888.)

January Term, 1888, No. 18, E. D., before Gordon, Ch. J., Paxson, Sterrett, Green, Clark, and Williams, JJ. Appeals from a decree of the Orphans' Court of Lancaster County confirming the report of an auditor to distribute a decedent's estate. Affirmed.

The auditor, Benjamin F. Davis, Esq., appointed to distribute the estate of Jacob H. Shirk, deceased, reported as follows:

In the distribution of said estate there seemed to be but one matter in dispute, and that was the claim of Ann Shirk, the widow of Jacob H. Shirk, deceased, against the estate of said decedent.

Ann Shirk was the daughter of Joseph Brubaker, Sr., late of Warwick township, said county, and it appears by the evidence that her father in his lifetime made her advancements on account of her share in his estate as follows:

| | |
|---|---|
| April 1, 1854.............................. | 925 00 |
| April 1, 1858.............................. | 1,000 00 |
| (Blank), 1863 ............................. | 500 00 |

| April 1, 1867 | 150 00 |
| March 21, 1874 | 200 00 |

Making a total aggregate of                    $2,775 00

—with which she seeks to charge the estate of her deceased husband, with interest thereon since his death on March 4, 1885.

The last item of $200 was receipted for by her deceased husband and afterwards charged against her (claimant) in a release and settlement of her father's estate. These payments were proven by notes expressing the purposes for which they were made, and the signature of Ann Shirk to them duly proven, as well also the aggregate set out and charged against her in a release which she and her husband, the decedent, signed along with others to the executors of her deceased father's estate,—so there is no doubt in the mind of the auditor that the money was paid to her.

The question then is, Did her husband receive this money, and if so, how much of it, and is it now charged to her?

There are no notes or anything in writing, so far as the auditor knows, to show that he got it, but admissions on his part that he got money belonging to his wife. On page 5 notes of testimony of first auditor's report, Levi B. Brubaker, a brother of claimant, says: "I had a settlement with Jacob H. Shirk for coal, and also I loaned $1,000 from him; then he told me he and his wife had their money together, and he loaned it away. . . . This was about a year and a half before his death, shortly before April."

Sarah Shirk, the daughter and only child of decedent and testator (on page 8 of same notes), says: "I heard my father say that mother gave her money to him, and that he was going to mark down how much she gave him; it was the last summer before my father died that I heard him say this."

Andrew B. Hackman, who was assessor of the township in the early part of the '60's, says that she was assessed for moneys at interest. In 1863 she was assessed for $2,000 at interest, and in 1864 in the name of Ann Shirk for $2,500. In this he refreshes his memory by the assessment books. He says further that he recommended that to avoid trouble they have their assessment put together.

It was shown that her husband had large sums of money at

interest, and that he bought considerable property after this,—one property, a farm for $8,200, purchased in August, 1870.

The decedent and claimant were married on October 22, 1863, and the husband died as before stated on March 4, 1885.

It would seem from the above, and it so appears to the auditor, that the husband did receive some money from his wife, but the great difficulty is to ascertain how much.

There was in addition to the above sum of $2,775 the sum of $669.05 paid to Ann Shirk, as shown by the release referred to, on March 14, 1876, that being the balance due her from her father's estate, making a total of her claim of $3,444.05. The last sum of $669.05 was received by her husband, according to one witness.

It is contended on the part of those objecting to the claim that it should not be allowed on two grounds: (1) The claim was not made out; and (2) that if there was any indebtedness it was canceled by the legacy to claimant in will of decedent. And in support of the second reason they cite the rule, 2 Wms. Exrs. 1113, that satisfaction of debts is presumed where legacy exceeds the indebtedness, etc.

In 2 Williams on Executors, Perkins's 6th Am. ed. 1409, 1300, it is laid down: "Presumption of satisfaction may be counteracted where there is an express direction in the will for the payment of all debts and legacies."

In Pennsylvania the doctrine has never been received with favor by our supreme court. In the will in question it is set forth, "Sixth, after all my personal and real estate has been converted into cash, and all debts, expenses, and commissions are paid, then the balance remaining in the hands of my hereinafter named executors I dispose of the same as follows, to wit: The one third thereof I give and bequeath to my wife, Ann Shirk," etc., thus precluding the idea that the legacy wiped out the debt, if any existed. The second reason is therefore not sustained.

As to the first reason, in the absence of any testimony to the contrary, the auditor is constrained to say that a case has been made out altogether not as clearly or strongly as would be desirable where a claim must be allowed. No testimony was taken to show that Mrs. Shirk did not receive the money, nor that her husband did not receive it from her. Nor was it shown or even pretended that she did not have money about or after the time of their marriage. She was present at the audit, and in the lan-

guage of the supreme court in Young's Estate, 65 Pa. 105:
"They did not, as they might have done, call the widow before
the auditor, and compel her to purge herself on oath in regard
to her claims." It seems to the auditor that he can only deter-
mine the amount, and that not so satisfactorily as he would like.

As the proof is in regard to the items in the claim, of $200
and $669.05, the auditor allows them both, as per ruling in
Young's Estate above referred to, 65 Pa. 101, it having been
shown that for the one item he (the husband) gave his note,
and on the other he received the money, thus turning the prima
facies against him.

As for the other items, aggregating $2,575, the auditor finds
more difficulty in disposing of them. The main difficulty is,
How much had Mrs. Shirk at the time of their marriage, and
where was her money? It was said that it was at interest, and
she was assessed for $2,000 or $2,500 at or about that time.
Is it likely that she would pay taxes on that amount if she did
not have it? But on the other hand they were unable to furnish
any testimony before your auditor to show where the money was
at interest, or anything specified in regard to it. Neither do
they show by direct testimony that he (decedent) got it. But
it is evident that she had money at the time of their marriage,
and it was not all expended for furniture or household effects.
It cannot be presumed that the wife expended it for her support,
because her husband had ample means, and his family was small
(wife and one child), and it was his moral and legal duty to sup-
port them.

As before stated, L. P. Brubaker said that decedent told him
that he and his wife had their money together, and he loaned it
away. If that is true (and the auditor has no right to disbelieve
it, because there was nothing to impeach his statement) her
money must have been loaned in his name, for there is nothing
to show that she has any money whatever loaned in her own
name. Besides, the daughter's testimony is to the effect that her
father said that her mother gave her money to him, and he was
going to mark down how much she gave him. All this goes to
show that he held it as her trustee, and that he intended to have
a separate account of it.

It is true that the daughter's testimony should be received
with caution, on account of the natural influence of the mother
over her. But the auditor considers her an important witness

against the estate, she being a devisee and her share affected by this claim.

In the absence of direct or express proof, the auditor is unwilling to allow the item in claim, of $925, dated April 1, 1854, that being too far back from the date of her marriage in 1863, and it might easily have been expended or disposed of in the meantime.

As for the items $1,000 in 1858, and $500 in 1863, the auditor, feels disposed to allow them, although some of it might have been expended in preparations for housekeeping; but considering that she was charged an advancement from her father's estate in the release given to the executors of said estate, signed by her and her husband, she is charged with $422.77, supposed to have been advanced to her about 1860 and 1859, for that purpose (see translation from family book of claimant's father appended thereto), and had probably $2,000 at interest. We allow the items of $1,000 and $500 in full, but without interest. The other items of $150 and $200 are allowed with interest.

Upon dismissing exceptions to this report, and confirming it absolutely, LIVINGSTON, P. J., after mentioning the sums received by the widow from her father's estate, said:

"Of these several sums the auditor finds the items of $150, $200, and $669.05 came to the possession of the decedent, who, at the time of his decease, held them in trust for the use of the claimant, and therefore awards them to her, with interest from his decease.

"The items $1,000 and $500 he allows also, but allows no interest, for the reason, as we understand the report, that some portion of the principal, or at least of the $500, may have been used in the purchase of articles in her preparation for housekeeping.

"The report would have been more easily understood, and in accordance with the decisions in cases of like character, if the learned auditor had deducted the amount he found to have been so used, and awarded her the balance with interest from the death of her husband; but as by his own method he appears to reach the same conclusion, it cannot be said to be erroneous.

"The learned auditor disallows the item of $925, which the claimant received from her father on April 1, 1854, nine years and a half prior to her marriage with the decedent, there being

no evidence to show that she had it at the time of her marriage, or that it came to the hands of her husband for her use. A review of the evidence, the report, and the authorities cited on the argument, has failed to convince us that the learned auditor has erred with reference to the matters complained of by either of exceptants. We therefore dismiss all the exceptions, and confirm the report absolutely."

From this decree both the executors and the widow appealed —the former assigning as error the allowance of the widow's claim; and the latter, the refusal to allow interest.

*John H. Fry* for the executors of Jacob H. Shirk.

*Simon P. Eby* for the widow, Ann Shirk.

PER CURIAM:

We concur with the auditor and the learned judge of the court below in their disposition of this case.

Decree affirmed, at costs of appellants.